No. 17-35998

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

GLORIA MITCHELL,

Plaintiff-Appellant,

v.

WINCO FOODS, LLC,

Defendant-Appellee.

On Appeal from the United States District Court
For the District of Idaho,
Case No. 1:16-cv-00076-BLW
The Honorable B. Lynn Winmill, United States District Judge.

---

REPLY BRIEF FOR
PLAINTIFF-APPELLANT GLORIA MITCHELL

---

Eric B. Swartz, ISB #6396
(eric@jonesandswartzlaw.com)
JONES & SWARTZ PLLC
623 W. Hays Street
Boise, Idaho 83702
Telephone: (208) 489-8989
Facsimile: (208) 489-9888

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue
Ste. 300
Denver, Colorado 80210

*Attorneys for Plaintiff-Appellant GLORIA MITCHELL*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................iv

I.    INTRODUCTION............................................................................1

II.   ARGUMENT ..................................................................................1

    A.  WinCo's reading of *Syed* ignores the informational
        harm and privacy violations the FCRA was designed
        to prevent ................................................................................1

        1.  The fact that WinCo's Disclosure contains
            different extraneous information than the
            disclosure in *Syed* shouldn't change the
            analysis ...........................................................................1

        2.  The allegations show that Mitchell and others
            faced an increased likelihood of confusion as a
            result of WinCo's unlawful FCRA Disclosure &
            Authorization. .................................................................2

        3.  WinCo's other attacks against applying *Syed*
            here—that Mitchell supposedly: (i) pleads only a
            procedural injury, (ii) misrepresents "the
            District Court's proper application of Spokeo,"
            and (iii) alleges "one sentence" of extraneous
            information—also lack merit...................................14

    B.  WinCo misinterprets Spokeo: Mitchell alleges facts to
        show an increased risk of actual harm resulting from
        WinCo's willful violation of the FCRA...........................18

        1.  WinCo misunderstands the privacy rights at
            issue under the FCRA's background check
            rules ...............................................................................19

      **2.**    **WinCo also misconstrues the informational harm at issue** .......................................................................... 24

      **3.**    **WinCo's remaining arguments, including its 16-case string-cite—miss the mark as well** .............. 29

  **C.**   **To the extent additional allegations of harm are required, Mitchell should be granted leave to amend** .................................................................................... 34

**III.**   **CONCLUSION** ................................................................................ 36

# TABLE OF AUTHORITIES

*Anderson v. Wells Fargo Bank*, N.A., 266 F.Supp.3d 1175 (2017) ......... 25

*Avendano–Ramirez v. Ashcroft*, 365 F.3d 813 (9th Cir. 2004) .............. 27

*Banks v. Central Refrigerated Services, Inc.*, No. 2:16-cv-356, 2017 WL
    1683056 (D. Utah May 2, 2017) .......................................... 15

*Ashley Moody v. Ascenda USA Inc., d/b/a 24–7 Intouch*,
    2016 WL 5900216 (S.D. Fla. Jan. 20, 2016) ........................ 32

*Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018) ....... 20

*Case v. Hertz Corp.*, 2016 WL 6835086 (N.D. Cal. Nov. 21, 2016) ......... 31

*Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-CV-02588-JCS, 2015 WL
    5782352 (N.D. Cal. Oct. 5, 2015) .......................................... 27

*Del Llano v. Vivint Solar Inc.,* No. 17-CV-1429-AJB-MDD, 2018 WL
    656094 (S.D. Cal. Feb. 1, 2018) ...................................... 6, 30

*Federal Election Comm'n v. Akins*, 524 U.S. 11 (1998) ......................... 28

*Feist v. Petco Animal Supplies, Inc.*,
    218 F. Supp. 3d 1112 (S.D. Cal. 2016) ................................... 5

*Fisher v. Enter. Holdings, Inc.*, No. 4:15CV00372 AGF, 2016 WL
    4665899 (E.D. Mo. Sept. 7, 2016) ........................................ 33

*Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS,
    2016 WL 6248309 (M.D. Fla. Oct. 26, 2016) ........................ 32

*Groshek v. Time Warner Cable, Inc.*,
    865 F.3d 884 (7th Cir. 2017) .......................................... 20, 22

*Gunther v. DSW Inc.*, 2016 WL 6537975 (E.D. Wis. Nov. 3, 2016) ........ 31

*Hargrett v. Amazon.com DEDC LLC*,
    235 F. Supp. 3d 1320 (M.D. Fla. 2017) .................................. 32

*Havens Realty Corporation, et al. v. Coleman*, 455 U.S. 363 (1982) ...... 28

*In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.* No.
    2615, 2017 WL 354023 (D.N.J. Jan. 24, 2017) .................... 32

*Kirchner v. First Advantage Background Servs. Corp.*, No. CV 2:14-1437
    WBS EFB, 2016 WL 6766944 (E.D. Cal. Nov. 14, 2016) ..... 31

*Lee v. Hertz Corp.* No. 15-CV-04562-BLF,
    2016 WL 7034060 (N.D. Cal. Dec. 2, 2016).......................... 31

*LeGrand v. IntelliCorp Records, Inc.*, No. 1:15 CV 2091,
    2017 WL 733664 (N.D. Ohio Feb. 24, 2017) ........................ 32

*Marquez v. Bank of Am., Nat'l Ass'n*,
    2018 WL 1948864 (N.D. Cal. Apr. 25, 2018) ....................... 29

*Meza v. Verizon Commc'ns, Inc.*,
    2016 WL 4721475 (E.D. Cal., 2016) ....................................... 5

*Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL
    7229140 (D. Ariz. Dec. 14, 2016) .................................... 15, 25

*Newton v. Bank of Am.,* No. 2:14-CV-03714-CBM-MRWx, 2015 WL
    10435907 (C.D. Cal. May 12, 2015)...................................... 27

*Public Citizen v. Department of Justice*, 491 U.S. 440 (1989) ............... 28

*Rodriguez v. El Toro Med. Inv'r Ltd. P'ship*, 2016 WL 6804394 (C.D.
    Cal. Nov. 16, 2016) .............................................................. 32

*Shoots v. iQor Holdings U.S. Inc.*, 2016 WL 6090723 (D. Minn. Oct. 18,
    2016) .................................................................................... 30

*Smith v. Ohio State Univ.*, No. 15-cv-3030, 2016 WL 3182675 (S.D. Ohio
June 8, 2016) ................................................................... 20, 22

*Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) ..............................*passim*

*Thomas v. FTS USA, LLC,*
193 F. Supp. 3d 623 (E.D. Va. 2016) ......................... 10, 15, 32

*Tyus v. United States Postal Serv.*, No. 15-CV-1467, 2016 WL 6108942
(E.D. Wis. Oct. 19, 2016) ........................................................ 33

## I.    INTRODUCTION

To hear WinCo tell it, the District Court correctly found that Mitchell has alleged bare procedural violations of the FCRA. WinCo asserts, *inter alia*, that *Syed* is inapposite, that Mitchell cannot show actionable informational or privacy harms, and that leave to amend should be denied.

WinCo's attacks lack merit. The FCRA's background check rules confer substantive informational and privacy rights that, when violated, give rise to injuries under Article III. *Syed* is on-point, and no additional allegations of actual harm or damages are required. Yet even putting *Syed* aside Mitchell's allegations meet the test for standing post-*Spokeo*. Finally, Mitchell should have been granted leave to amend if required.

As such, and as explained in her Opening Brief and more fully below, this Court should reverse and remand.

## II.    ARGUMENT

### A.    WinCo's reading of *Syed* ignores the informational harm and privacy violations the FCRA was designed to prevent.

WinCo first argues that the lower court properly distinguished *Syed* given the absence of a liability waiver in WinCo's Disclosure. (WinCo Br. pp. 11-18.) According to WinCo, the absence of a liability

waiver ends the analysis. (WinCo Br. pp. 11-13.) While WinCo begins with the claim that, "Mitchell requests that the Court adopt *Syed's* holding without consideration of the distinguishable facts of this case" (WinCo Br. p. 12), its argument ultimately levels dual accusations that: (1) "Mitchell[] attempt[s] to obscure this glaring difference" (Appellee Br. p. 13) by supposedly urging the Court to "blindly duplicate *Syed's* holding in this case" (WinCo Br. p. 16), and (2) Mitchell's argument is "nothing more than an after-the-fact contrivance to discredit the District Court's proper application of *Spokeo*—"nothing more than an unhappy litigant's rehashing of an unsuccessful argument." (WinCo Br. p. 17.)

Setting rhetoric aside, nowhere has Mitchell claimed that *Syed* is factually identical to the instant case. Rather, Mitchell has urged the Court to apply its reasoning in *Syed*—wherein the Court explained that the FCRA's background check rules implicate more than "bare procedural" rights—to the instant case. WinCo fails to explain why Article III standing should only exist under the FCRA when a liability waiver is included in the disclosure. As Congress recognized in requiring that the disclosure standalone, extra information exposes job

applicants to an increased risk that they will unknowingly authorize the reports. Moreover, Mitchell doesn't misrepresent the District Court's application of *Spokeo*, nor can her allegations be fairly reduced to an objection regarding one sentence in WinCo's application. As such, and as explained below, WinCo's defense of the lower court's treatment of *Syed* falls apart.

1. **The fact that WinCo's Disclosure contains different extraneous information than the disclosure in *Syed* shouldn't change the analysis.**

WinCo asserts that, "[a]s the District Court recognized, *Syed* is distinguishable due to the lack of a liability waiver in this case." (WinCo. Br. p. 13.) WinCo posits that, unlike *Syed*, "[i]n Mitchell's case, no liability release was included in the FRCA [*sic*] disclosure form or the authorization form, and Mitchell's FAC did not allege confusion to the extent that she did not know a background check would be procured." (WinCo Br. p. 12.) These arguments fail. As set forth below, while it is true that WinCo's Disclosure doesn't include a liability waiver, this should not be a matter of Constitutional significance.

As an initial matter, WinCo's objection that "...Mitchell's FAC did not allege confusion to the extent that she did not know a background

check would be procured," (WinCo Br. p. 12) is without merit. Mitchell's First Amended Complaint ("FAC") was filed well-before this Court issued its decision in *Syed*, and the facts are sufficient, when viewed in a light most favorable to Mitchell, that she and others faced an increased risk of confusion sufficient to constitute concrete harm. Further, the plaintiff in *Syed* never alleged he was confused by the disclosure either. (*See* Dkt. 27, Ex. A.) And in any case, and as set forth more fully in her Opening Brief and in Section III.C, *infra*, Mitchell has specifically requested leave to amend to add facts regarding her alleged confusion to the extent required.

WinCo's argument-in-chief—that the absence of a liability waiver renders *Syed* wholly inapposite—fares no better. *Syed* explained that FCRA background check disclosure claims allege "more than a 'bare procedural violation'" of the statute, including privacy and informational rights that are plausibly violated when job applicants or employees could be confused by the disclosure. *See Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017). In light of the disclosure at issue in *Syed*, which, among other deficiencies, contained a liability waiver, this Court determined that the plaintiff was plausibly confused and

wouldn't have executed the authorization had a compliant disclosure been provided.

While *Syed* addressed a liability waiver, there is little reason to conclude that that is the only extraneous information capable of confusing job applicants and employees. For example, disclosures that contain language securing consent by the applicant to the release of the consumer report to third parties (*Meza v. Verizon Commc'ns, Inc.*, 2016 WL 4721475, at *2 (E.D. Cal., 2016)) and disclosures containing "an authorization allowing other entities to disclose information about the applicant," to the consumer reporting agency have been found actionable. *Feist v. Petco Animal Supplies, Inc.*, 218 F. Supp. 3d 1112, 1113 (S.D. Cal. 2016). In both cases the disclosures were plausibly confusing notwithstanding the absence of liability waivers. And these are just two illustrations: there are innumerable ways that employers can include extraneous information in their disclosures so as to render them unclear and confusing.

This holds especially true when Article III is considered: why should it matter under the Constitution that the confusing nature of the disclosure be caused by a liability waiver as opposed to some other

extraneous information that plausibly detracts from or overwhelms the disclosure? It shouldn't—particularly where in Congress's judgment extraneous information (including providing the disclosure together with other documents) potentially detracts from the disclosure and is expressly prohibited. In either case, so long as the disclosure is plausibly confusing to consumers it presents concrete injuries, including an increased risk of informational and privacy harms.

It should be recalled that "the point of inquiring into standing is to ensure that parties have a 'personal stake' in the outcome, **but also to make certain that the courts do not extend their reach into the province of the legislative and executive branches**." *Del Llano v. Vivint Solar Inc.,* No. 17-CV-1429-AJB-MDD, 2018 WL 656094, at *4 (S.D. Cal. Feb. 1, 2018) (emphasis added), *appeal dismissed*, No. 18-55189, 2018 WL 2251782 (9th Cir. Apr. 9, 2018) (citation omitted). WinCo advocates for just the opposite: ignoring Mitchell's personal stake in the dispute, WinCo asks this Court to usurp the judgment of Congress and find that its Disclosure & Authorization are not "confusing enough," absent a liability waiver, to confer standing.

Hence, while it is true that *Syed* faced a liability waiver, the Court

should refuse to restrict *Syed* solely to FCRA disclosures that include such a provision.[1] The test is whether the allegedly extraneous information plausibly detracts from or overwhelms the consumer report disclosure so as to increase the likelihood that job applicants or employees will be confused and deprived of the opportunity to make a knowing authorization. As explained next, the FAC demonstrates as much here.

### 2. The allegations show that Mitchell and others faced an increased likelihood of confusion as a result of WinCo's unlawful FCRA Disclosure & Authorization.

WinCo asserts that Mitchell's arguments regarding the confusing nature of its Disclosure & Authorization are not included in the FAC. (WinCo Br. p. 13-14.) WinCo concludes that "the FAC is devoid of any factual allegations that would permit this Court from [*sic*] drawing the inference requested by Mitchell." (WinCo. Br. p. 14.) In doing so, WinCo fails to accord sufficient weight to the sections in the FAC that the

---

[1] It's worth noting that, as set forth more fully in Section III.B.2, *infra*, several of the district court cases cited by WinCo for the proposition that no standing exists analyzed FCRA disclosures that included liability waivers and thus are inconsistent with *Syed* even under WinCo's own hyper-restrictive reading.

Disclosure and Authorization were unclear and overshadowed by

extraneous information (AOB 32-44)[2], including allegations that:

- The Disclosure form improperly included disclosures for
  investigative consumer reports with the consumer report
  disclosure that overwhelm the consumer report disclosure;

- The Authorization was packed with extraneous information,
  (R. 198 ¶ 15; R. 205 ¶¶ 38, 39) including statements:

  -acknowledging that the applicant/employee has received
  a copy of the "Summary of Your Rights Under the Fair
  Credit Report Act" even though no summary was actually
  provided;

  -consenting to the preparation of background reports by a
  third-party vendor called TalentWise;

  -confirming the applicant's/employee's understanding that
  any information provided may be used "for the purpose of
  obtaining consumer reports and/or investigative consumer
  reports"—**a separate authorization <u>solely</u> for consumer
  reports was *never* provided. Consumers must consent
  to both types of reports or none**;

  -agreeing that "nothing herein shall be construed as an offer
  of employment or a contract for services";

  -authorizing "law enforcement agencies, learning
  institutions ...information service bureaus, credit bureaus,
  record/data repositories, courts (federal/state/local), motor
  vehicle agencies...past or present employers, the military,

---

[2] It also unfairly ignores Mitchell's argument, as set forth in her
Opening Brief (AOB 45-48) and in Section III.C, *infra*, that she should
be granted leave to amend to the extent express allegations of confusion
are required.

and other individuals or sources to furnish any and all information...required by the consumer reporting agency"— an overreaching provision (given the lack of knowledge applicants have regarding the methods used by such "other individuals or sources") that effectively requires applicants to bless such data collection techniques; and

-certifying that all information provided is true, accurate, and complete and that copies of the form or authorization are acceptable (See R. 210);

- The Disclosure & Authorization were provided to Mitchell through WinCo's online application, not separately after her application had already been submitted (R. 198 ¶ 13); and

- Mitchell alleges that this extra information was unlawful, unclear, and "overshadow[ed]" the required FCRA disclosure.

(R. 202 ¶¶ 30-32.) Taking such allegations in a light most favorable to Mitchell undercut's WinCo's assertion that the "FAC is devoid of any factual allegations that would permit this Court from [sic] drawing the inference" that Mitchell was confused by the extraneous information. The extraneous information is expressly unclear, overwhelming, and distracts from the FCRA disclosure—threatening the very harm Congress sought to prevent.

The fact that the Authorization includes a sentence indicating that Mitchell has "carefully read and understands" the background check disclosure changes nothing. Indeed, there is little basis for

9

allowing employers to include limitless superfluous information in their FCRA disclosures so long as they include an acknowledgement that the employee has read and understands the disclosure in the fine print of the authorization. And the statement is inaccurate. Indeed, the mere fact the Authorization includes such an acknowledgement doesn't make it true—the Authorization also asserts that Mitchell "received a copy of the 'Summary of Your Rights Under the Fair Credit Opportunity Act'" even though none was provided.

WinCo next attacks Mitchell's reliance on *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 632 (E.D. Va. 2016), which found that the FCRA's disclosure and authorization "protections are clearly substantive, and neither technical nor procedural." (WinCo. Br. p. 15.) WinCo asserts that, "[i]n *Thomas*, the plaintiff alleged that the defendants did not provide plaintiff with a written disclosure that they intended to obtain a copy of his consumer report for employment purposes and that plaintiff did not provide defendants with his written authorization." (WinCo Br. pp. 14-15.) This is false. Thomas <u>was</u> provided with an FCRA disclosure—one he claimed was not "clear and conspicuous." Indeed, the *Thomas* court was careful to note that:

Defendants adduced evidence that Thomas received and signed the Employment Release Statement. For his part, Thomas testified that the document was placed in front of him and he was told to sign it (which he did). ***However, that factual issue is not significant to the standing claim, because the claim is that the Employment Release Statement was not a "clear and conspicuous" disclosure and that it does not contain a proper authorization.***

193 F. Supp. 3d at 641 n.3 (emphasis added). Hence, it is erroneous to assert, as WinCo does, that *Thomas* is factually distinct because in this case (to hear WinCo tell it), "[u]nlike *Thomas*, Mitchell does not deny that she was provided the FCRA Disclosure…." Thomas never claimed as much. Rather, *Thomas* alleged precisely what Mitchell pleads here: that he received a disclosure that wasn't clear or conspicuous and that didn't contain a proper authorization.

WinCo's reliance on *Groshek v. Time Warner Cable, Inc.* is also misplaced. Mitchell cited *Groshek* in her opening brief because it facially supports *Syed's* standing analysis—*i.e.*, like *Syed*, it holds that applicants and employees may have standing where the disclosure is plausibly confusing. Mitchell never asserts that *Groshek* or *Syed* indicate consumers have standing automatically whenever Congress includes a statutory right of action. That mischaracterizes the

argument. Rather, Mitchell's position is that the District Court erred in requiring that *additional* harm or damages, beyond Mitchell's alleged informational and privacy harms, must be pleaded.[3]

As for WinCo's assertion that the lower court properly found that Mitchell plead a "dearth of factual allegations" (WinCo Br. p. 15) that is also false. The District Court concluded that Mitchell needed to show additional injury beyond the "procedural" informational harm and privacy invasions she pleaded but couldn't because "there is no allegation that Mitchell was harmed in any other way, such as WinCo obtaining or distributing false information about her. And she received the very job she applied for at WinCo." (R. 9, 11-12.) In so holding, the District Court mistakenly characterized Mitchell's alleged informational and privacy harms as being merely "procedural." Compounding this mistake (or as a result of it), the District Court imposed a heightened standard under which Mitchell was purportedly required to show the dissemination of inaccurate/negative information about her or an

---

[3] Additionally, and as discussed in Section III.B.1, *infra*, the FCRA Disclosure analyzed in *Groshek* contained a liability waiver for all entities "furnishing references or other information."

adverse employment action—despite the fact that Congress never limited the FCRA's private right of action to such theories.

WinCo's final attack here—that the "lack of any factual allegation of confusion" renders *Syed* distinguishable—also falls short. Again, the allegations support the inference that WinCo's Disclosure & Authorization increased the risk of confusion for Mitchell and others. Further, the plaintiff in *Syed* never expressly alleged he was confused as a result of the unlawful disclosure either. (*See* Dkt. 27, Ex. A.) Rather, this Court reviewed the disclosure, explained the concrete privacy and informational harms implicated when Congress enacted the FCRA's background check rules, and concluded that it was reasonable to infer *Syed* was confused. *See Syed*, 853 F.3d at 499-500. The Court should infer the same here given the overflow of extraneous information (including the investigative consumer report language in the disclosure, the lack of any authorization solely for consumer reports, the provision agreeing that no offer of employment has been made, wording that blesses the data collection and furnishing methods used, and the presentment of the disclosure with the application.

Put succinctly, WinCo's attempts to distinguish or restrict *Syed* fail.

**3.    WinCo's other attacks against applying *Syed* here—that Mitchell supposedly: (i) pleads only a procedural injury, (ii) misrepresents "the District Court's proper application of *Spokeo*," and (iii) alleges "one sentence" of extraneous information—also lack merit.**

WinCo's remaining arguments regarding *Syed* are unpersuasive. First, WinCo concludes that the "District Court correctly denied Mitchell's request to ignore *Spokeo* and permit a bare procedural violation to constitute standing." (WinCo Br. p. 17.) Again, this is based on WinCo's mistaken assertion that the FCRA's disclosure rules implicate only procedural rights. (WinCo Br. p. 16) (asserting that the District Court "properly applied" *Spokeo* by recognizing that "*Spokeo* makes clear that [while] a 'violation of a procedural right granted by statute can be sufficient in some circumstances to constitute an injury in fact…" the "violation of a procedural right" may not be "sufficient in all circumstances.") (WinCo Br. p. 16.) Both WinCo and the lower court misunderstand the rights at issue. Again, as this Court aptly explained in *Syed*:

> Syed alleges more than a "bare procedural violation." The disclosure requirement at issue, 15 U.S.C. §

> 1681b(b)(2)(A)(i), creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process. The authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check. By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy." See *Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, J., concurring)).

853 F.3d at 499; *see also Thomas,* 193 F.Supp.3d at 628–638 (describing the FCRA's dual rights to specific information and privacy and concluding, "[t]hose protections are clearly substantive, and neither technical nor procedural."); *see also Banks v. Central Refrigerated Services, Inc.*, No. 2:16-cv-356, 2017 WL 1683056, at *3 (D. Utah May 2, 2017) (concluding that Congress created in Section 1681b(b)(3) "at least two substantive rights on behalf of applicable consumers who suffered an adverse employment action based in whole or in part on a consumer report: a right to information and a right to correct inaccurate information."); *see also Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *6 (D. Ariz. Dec. 14, 2016) ("Violations

of FCRA that unfairly deprive a consumer of relevant information …
implicate the harms Congress identified in FCRA, and thus cause
concrete harms."). As such, WinCo, like the lower court, misconstrues
the substantive nature of the rights at issue.

WinCo's next argument is confusing. Although WinCo asserts that
"the District Court provided an example of a situation where a concrete
injury may be recognized by citing to Justice Alito's conclusion in
*Spokeo* (ER Vol. I, p. 12)," it proceeds to quote the District Court's citing
of an example that "Justice Alito provided…of a bare procedural
violation that does <u>not</u> create Article III standing…." (WinCo. Br. p. 17.)
(Emphasis added). Regardless, Justice Alito's example of a
nonactionable bare procedural injury—where a consumer reporting
agency fails to provide the correct notice to a user of the agency's
information "but the information is entirely accurate"—offers little
insight. Whereas the background check disclosure rules provide
consumers with the right to specific information, the regulations that
require credit bureaus to provide notices to end users of the reports
implicates no comparable informational rights. That is, in Justice
Alito's example the applicant or employee hasn't been denied any

information to which s/he is entitled and thus couldn't sue given the lack of any particularized injury.

Nor are the privacy concerns the same. A job applicant or employee who receives an unlawful notice may be denied the ability to make a knowing disclosure—thereby increasing the risk that the report, and its sensitive contents, is obtained without their consent. No similar privacy rights are at issuing in Justice Alito's example.[4] The consumer has no comparable ability to enforce such a rule.

For its final attack on *Syed*, WinCo repeats its complaint that *Syed* is different because of the liability waiver. (WinCo Br. p. 18.) As explained, while WinCo's Disclosure & Authorization don't contain a liability waiver, they feature other information that renders them confusing and threatens the ability of applicants and employees to make knowing authorizations. Indeed, nowhere are consumers able to simply authorize the consumer report—they must also authorize

---

[4] Of course, if the information was inaccurate, the fact that the consumer reporting agency failed to provide the mandated notice to end users could conceivably be used as evidence that the consumer reporting agency has failed to adopt reasonable procedures designed to ensure maximum accuracy in its reporting—the very claim at issue in *Spokeo*.

investigative consumer reports. WinCo's repeated[5] assertion that this case boils down to "one sentence" in the Disclosure form misstates Mitchell's claim: in addition to the one sentence that plagues the Disclosure form, the Authorization is riddled with extra information (see Section II.A.2, *supra*) and both forms were improperly provided to Mitchell as part of WinCo's online job application.[6]

In sum, the District Court misclassified the nature of the harm as being merely procedural when, in fact, *Syed* makes clear that the FCRA protections at issue implicate more than bare procedural rights. As such, WinCo cannot show that the lower court correctly analyzed *Syed*.

Unable to distinguish *Syed*, WinCo pivots and asserts that, irrespective of *Syed*, Mitchell lacks standing under *Spokeo*. As explained below, none of WinCo's *Spokeo* arguments has merit either.

**B.  WinCo misinterprets *Spokeo*: Mitchell alleges facts to show an increased risk of actual harm resulting from WinCo's willful violation of the FCRA.**

---

[5] WinCo repeats this mischaracterization of Mitchell's claim throughout its filing. (*See e.g.* WinCo Br. pp. 8, 12, 18 (twice), 23 & 25.) Put simply, this Court should refuse to reduce Mitchell's allegations to "one sentence" in the Disclosure form.

[6] *See* Section III.B.2, *infra*.

WinCo's next attack claims that Mitchell's claims "cannot survive *Spokeo*'s two-prong test for determining whether they are sufficiently concrete." (WinCo Br. p. 19.) WinCo argues that Mitchell's privacy and informational harms are not sufficiently concrete (WinCo Br. pp. 19-29), and string cites to cases it claims support its position that Mitchell alleges a nonactionable "bare procedural" violation. (WinCo Br. pp. 29-31.) As set forth below, WinCo, mirroring the lower court, overlooks both: (1) the relationship Mitchell's privacy and informational rights have to harms that have "traditionally been regarded as providing the basis for a lawsuit" and (2) the fact that Congress made a judgment that the particular harms meet the rigors of Article III, thereby articulating a chain of causation.

### 1.    WinCo misunderstands the privacy rights at issue under the FCRA's background check rules.

WinCo asserts that "Mitchell's claim that any language in a FCRA disclosure that is technically superfluous invalidates the authorization because it can automatically be inferred that the consumer's understanding of the disclosure or decision to sign the authorization

was compromised." (WinCo Br. p. 19.)[7] This is untrue. Mitchell has never alleged or argued that *any* "technically superfluous" information *automatically* results in standing. Rather, Mitchell's claim is that superfluous information that plausibly overwhelms the disclosure or renders it unclear exposes consumers to actual informational and privacy harms—namely an increased risk that they will be confused and denied the ability to knowingly authorize the reports. These rights are substantive, not "bare procedural."

WinCo cites to three cases—*Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 780 (9th Cir. 2018), *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884 (7th Cir. 2017), and *Smith v. Ohio State Univ.*, No. 15-cv-3030, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016)—none of which offer it much help. *Bassett* involved a claim under the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), 15 U.S.C. § 1681c(g). *See* 883 F.3d at 777–78. Bassett claimed that he had received a receipt that unlawfully included his credit card expiration date. Refusing to find concrete harm, the Court explained that "his claimed 'exposure' to

---

[7] WinCo cites to "AOB, p. 32" for this supposed argument by Mitchell. Not surprisingly, nowhere can such an assertion be found on that page (or on any other) of Mitchell's opening brief.

identity theft—caused by ABM's printing of his credit card expiration date on a receipt that he alone viewed—does not have 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Id*. at 780. That is not the case here. As explained in *Syed*, the FCRA's disclosure rules implicate traditional privacy and informational rights. *See* 853 F.3d at 496-497. Further, WinCo's assertion that "[l]ike in *Bassett*, Mitchell's information was not disclosure to anyone but herself" (WinCo Br. p. 21) is incorrect. Because WinCo used unlawful documents, the disclosure of the report from TalentWise to WinCo was improper. Moreover, *Bassett* also reasoned that Bassett couldn't show that Congressional judgment supported a finding of standing because "Congress clarified that printing the expiration date on a receipt was not a willful violation of the FCRA during a temporary safe-harbor period." 883 F.3d 776, 781–82. Congress made no similar clarification for FCRA background check violations. Hence, reliance on *Bassett* is misplaced.

WinCo next revisits *Groshek*, asserting that the plaintiff signed the disclosure and authorization form and "presented no factual

allegations plausibly suggesting he was confused by the disclosure form or that he would not [*sic*] signed the disclosure if it was a compliant disclosure, and therefore he had no concrete privacy injury." (WinCo. p. 21.) While both *Syed* and *Groshek* hone in on the potential for confusion as the lynchpin of the analysis, it is unlikely that this Court would have reached the same conclusion as the panel in *Groshek* did. Time Warner's disclosure stated: "I hereby release from liability all persons and organizations furnishing references or other information." (*See* Dkt. 27, Ex. B.) Under WinCo's own reading of *Syed*, such a liability waiver would give rise to a plausible allegation of confusion. Yet *Groshek* itself concluded that "*Syed* is inapposite. The Ninth Circuit had factual allegations from which it could infer harm, whereas Groshek alleges none." 865 F.3d at 889. And in any case, unlike the Plaintiff in *Groshek*, Mitchell sets forth facts from which such an inference can be made (and should be granted leave to amend if additional allegations are required).

 *Smith v. Ohio State Univ.* is also of limited value. The *Smith* court found no standing because "Plaintiffs admitted that they did not suffer a concrete consequential damage as a result of OSU's alleged breach of the FCRA." *Smith*, 191 F. Supp. 3d at 757. That misstates the standard.

The test for standing asks whether the harms at issue are those closely related to injuries recognized by courts more historically and whether Congress made a judgment that the harm meets Article III—additional consequential damages are not required.

WinCo also asserts that Mitchell cannot rely on extraneous information in the Authorization to show her privacy was invaded. (WinCo Br. p. 22.) This again mischaracterizes the pleadings. Mitchell's claim is that the disclosure form and authorization are both riddled with superfluous information (a violation of the Act) and were presented together in WinCo's job application (also a violation). To allow WinCo to circumvent the clear and conspicuous disclosure requirement by loading up the authorization with otherwise prohibited information makes little sense, particularly where the two provisions are supposed to ensure applicants and employees have the ability to make knowing authorizations. It is unclear what Mitchell is being asked to authorize here, as nowhere is she provided the opportunity to simply consent to the background check. Rather, she must consent to both consumer reports and investigative consumer reports, authorize law enforcement and others to furnish information to TalentWise, acknowledge the

receipt of documents that were never provided, and make other false representations. By loading up the Authorization as alleged, Mitchell and others plausibly face a real risk that they will unknowingly authorize the reports.

### 2. WinCo also misconstrues the informational harm at issue.

WinCo's next attack presents a patchwork of arguments that asserts Mitchell hasn't suffered any actionable informational harm. WinCo first asserts that Mitchell "admits that the 'extraneous information' she refers to in the Disclosure is only one sentence…." (WinCo Br. p. 23.) This repeated argument (*see* footnote 5, *supra*) goes nowhere. Mitchell claims that the extraneous information went well beyond "one sentence" in the disclosure—the Authorization was filled with superfluous information (*see* Section III.A.2 *supra*), and the documents were improperly included with other documents in WinCo's job application.

WinCo further argues that "Mitchell never contends that she did not receive the information to which she was entitled." (WinCo Br. p. 23.) This is also untrue. Mitchell claims that she was entitled to a clear, standalone disclosure and that she didn't receive one. WinCo counters

that Mitchell hasn't shown, however, "that any information was lacking." (WinCo Br. p. 24.) Adopting such a position both usurps Congress's judgment that extraneous information distracts applicants and employees and guts Congress's authority to mandate a specific disclosure. Indeed, "an employer 'does create a real risk of harm' when it uses 'a disclosure that, because it is merely one section of a larger document, results in 'information overload' which inhibits a consumer's ability to agree to a background check with full knowledge of their rights and the potential consequences.'" *Anderson v. Wells Fargo Bank*, *N.A.*, 266 F.Supp.3d 1175 (D.S.D. 2017) (citation omitted), *Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *5 (D. Ariz. Dec. 14, 2016), *reconsideration denied*, No. CV-14-02357-PHX-GMS, 2017 WL 131566 (D. Ariz. Jan. 13, 2017) ("The same is true for a disclosure that, because it is merely one section of a larger document, results in 'information overload' which inhibits a consumer's ability to agree to a background check with full knowledge of their rights and the potential consequences.") Hence, in mandating a standalone disclosure Congress recognized the risk to consumers of information overload.

WinCo's argument that Mitchell acknowledged reading and understanding the disclosure (WinCo Br. p. 24) fares no better this time around. (*See* Section III.A.2, *supra*.) Again, such an acknowledgement packed into an already unlawful authorization form carries little weight.

WinCo further claims that the Court should disregard the Willner Advisory Opinion. (WinCo Br. p. 25.) Willner shows that the FTC has consistently warned employers against including investigative consumer report disclosures in the consumer report disclosure. WinCo ignored this guidance and thus increased the risk that the investigative consumer report disclosure could overshadow the consumer report disclosure—as Mitchell expressly alleges is the case here (indeed, there is no ability to authorize a consumer report without agreeing to an investigative consumer report). WinCo's attempt to trivialize Willner should be discounted.

WinCo also attacks Mitchell's claim that the Authorization & Disclosure were unlawfully included in the job application. The legislative history makes clear that Congress intended the statutory phrase "in a document consisting solely of the disclosure," to mean that

"[c]onsequently, an employer could not make the disclosure in either a job application or an employee manual." (AOB 43, citing *Thomas*, 193 F. Supp. 3d at 633) (quoting H.R. Rep. No. 103-486, 1003d Cong. 2d Sess. 30 (1994)). Neither of the cases WinCo cites is persuasive. The court in *Newton v. Bank of America*, a pre-*Spokeo* decision, simply concluded that "[t]he FCRA does not prohibit an employer from providing an FCRA disclosure as part of the employer's job application process." No. 2:14-CV-03714-CBM-MRWx, 2015 WL 10435907, at *8 (C.D. Cal. May 12, 2015). No explanation was provided, and the plaintiff never apprised the court of the legislative history indicating the opposite. Likewise, in *Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-CV-02588-JCS, 2015 WL 5782352, at *6 (N.D. Cal. Oct. 5, 2015) the court stated that it "is not aware of any authority supporting this contention that merely presenting these documents together violates § 1681b(b)(2)(A)(i)." Again, the legislative history was never consulted, despite apparent ambiguity regarding the terms "clear and conspicuous" and "a document consisting solely of the disclosure." *See Avendano–Ramirez v. Ashcroft*, 365 F.3d 813, 816 (9th Cir. 2004) (legislative history to be consulted when statutory language is ambiguous).

27

WinCo also attacks Mitchell's reliance on *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998) and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989), claiming once more that Mitchell wasn't denied any information to which she was entitled—she simply received extra information. This again overlooks information overload and ignores the fact that Mitchell claims she was entitled to a clear and conspicuous disclosure and didn't receive one.

WinCo lastly attempts to distinguish *Havens Realty Corporation, et al. v. Coleman*, (WinCo Br. p. 28) where an African American tester-plaintiff was provided false information about the availability of apartments. The tester-plaintiff never intended to rent an apartment. 455 U.S. 363, 373-74 (1982). Nevertheless, the Supreme Court explained that the Fair Housing Act "establishes an enforceable right to truthful information concerning the availability of housing" and that "[a] tester who has been the object of a misrepresentation made unlawful under [the Fair Housing Act] has suffered injury in precisely the form the statute was intended to guard against." Similarly, the FCRA establishes an enforceable right to a clear and conspicuous consumer report disclosure in a document consisting solely of the

disclosure, and a consumer denied such a disclosure suffers the precise injury—informational harm and an increased risk of privacy violations—the statute was designed to prevent.[8]

In short, WinCo's assertions regarding Mitchell's informational harm are meritless and should be rejected.

### 3. WinCo's remaining arguments, including its 16-case string-cite—miss the mark as well.

For its final *Spokeo*-related arguments, WinCo repeats many of its prior objections, including that the FAC doesn't contain sufficient facts, that Mitchell only alleges a "technical violation," and that "Mitchell cannot rely on buzzwords of privacy and informational injury…." (WinCo Br. p. 29.) WinCo also provides a 16-case string-cite to authorities it claims support its position. (WinCo Br. p. 30.)

Such arguments fail. First, all of WinCo's rehashed assertions fall apart for reasons set forth previously.

Second, WinCo's string-cite misconstrues several of the cases it features. The disclosure at issue in *Marquez v. Bank of Am., Nat'l Ass'n*, 2018 WL 1948864 (N.D. Cal. Apr. 25, 2018) didn't contain an

---

[8] WinCo's claim that nothing was misrepresented in the disclosure is false—no summary of rights was actually provided.

"investigative consumer report" disclosure. In fact, <u>none</u> of the extraneous information Mitchell complains about in this case was present in Bank of America's disclosure. (*See* Dkt. 27, Group Ex. C-1.)

*Del Llano v. Vivant Solar Inc.*, 2018 WL 656094 (S.D. Cal. Feb. 1, 2018) didn't involve an FCRA disclosure for employment purposes—it was a consumer credit transaction.

The FCRA disclosures in *Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355 (S.D. Fla. Aug. 14, 2017) and *Marc Marchioli v. Pre-employ.com, Inc., Eisenhower Med. Ctr., et al.*, No. EDCV162305JGBDTBX, 2017 WL 7049527, at *7 (C.D. Cal. June 30, 2017) also contained none of the extraneous information complained about in this case. (*See* Dkt. 27, Group Ex. C-2, C-3.)

The plaintiff in *Landrum v. Blackbird* Enters. LLC, 214 F. Supp. 3d (S.D. Tex. 2016) had sued at least three prior employers under the FCRA and thus could not plausibly claim he was confused by an inadequate disclosure. (*See* Dkt. 27, Group Ex. C-4.)

The two *Groshek* cases that comprised the Seventh Circuit appeal, the disclosure in *Shoots v. iQor Holdings U.S. Inc.*, 2016 WL 6090723 (D. Minn. Oct. 18, 2016), and the disclosure in *Case v. Hertz Corp.*, 2016

WL 6835086 (N.D. Cal. Nov. 21, 2016) all included liability waivers and would therefore be actionable under WinCo's own reading of *Syed*.

The decision in *Kirchner v. First Advantage Background Servs. Corp.*, No. CV 2:14-1437 WBS EFB, 2016 WL 6766944, at *3 (E.D. Cal. Nov. 14, 2016) is on appeal; the disclosure contains a liability waiver. (*See* Dkt. 27, Group Ex. C-5.) Also, the *Kirchner* court was, like WinCo, mistaken as to whether the plaintiff in *Thomas*, "was never provided notice of or opportunity to consent to release of his consumer report." Again, this is false—Thomas was provided with an FCRA disclosure that he claimed was not "clear and conspicuous."

*Gunther v. DSW Inc.*, 2016 WL 6537975 (E.D. Wis. Nov. 3, 2016) is admittedly similar, though the case was appealed and then settled.

The court in *Lee v. Hertz Corp.* agreed that confusion must be alleged but found that the "Plaintiffs have not proffered such an allegation nor is there any indication that Plaintiffs could plausibly allege those facts." No. 15-CV-04562-BLF, 2016 WL 7034060, at *5 (N.D. Cal. Dec. 2, 2016).

And finally, the plaintiffs in *In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, "concede[d] that they do not plead

any concrete harm; their claims are based on a bare violation of the FCRA." No. 2615, 2017 WL 354023, at *5 (D.N.J. Jan. 24, 2017). Mitchell makes no similar concession here.

WinCo additionally cites to several post-*Spokeo* cases[9] that fail to support its position. In *LeGrand v. IntelliCorp Records, Inc.*, No. 1:15 CV 2091, 2017 WL 733664, at *3 (N.D. Ohio Feb. 24, 2017), *order amended on reconsideration*, No. 1:15 CV 2091, 2017 WL 2313865 (N.D. Ohio May 26, 2017) the court distinguished cases where standing had been found by stating, in total, "In many of those instances, the courts found that there had either been no disclosure of required information, or no authorization by the consumer/employee for a background investigation." No further explanation was provided, yet, as seen with WinCo's and *Kirchner's* treatment of *Thomas*, there is a false

---

[9] Several cases have disagreed with *WinCo's* authorities, finding standing for FCRA violations. *See e.g. Thomas*, 193 F.Supp.3d at 626–27; *Hargrett v. Amazon.com DEDC LLC*, 235 F. Supp. 3d 1320, 1326–27 (M.D. Fla. 2017); *Rodriguez v. El Toro Med. Inv'r Ltd. P'ship*, 2016 WL 6804394, at *5 (C.D. Cal. Nov. 16, 2016); *Ashley Moody v. Ascenda USA Inc., d/b/a 24–7 Intouch*, 2016 WL 5900216, at *5 (S.D. Fla. Jan. 20, 2016); *Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-CV-1324-T-30AAS, 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016).

impression that Thomas never received any disclosure when in fact he did. Either way, *LeGrand's* razor thin "analysis" is unpersuasive.

*Tyus v. United States Postal Serv.*, No. 15-CV-1467, 2016 WL 6108942, at *5 (E.D. Wis. Oct. 19, 2016), *order vacated in part on reconsideration*, No. 15-CV-1467, 2017 WL 52609 (E.D. Wis. Jan. 4, 2017) is consistent with *Syed* in that it found allegations of confusion to be central.[10] Mitchell has explained that the FAC permits such an inference here (or that she should be allowed to amend).

Finally, the case of *Fisher v. Enter. Holdings, Inc.*, No. 4:15CV00372 AGF, 2016 WL 4665899, at *4 (E.D. Mo. Sept. 7, 2016) is also non-controlling. There the court concluded that "Plaintiff did not allege that she did not, in fact, see the disclosure, or that the language of the disclosure was poorly drafted, or otherwise incomprehensible. Nor did she allege that her authorization was not knowing." Mitchell, however, expressly pleads the disclosure was unclear and overshadowed by extraneous information.

---

[10] Notably, the plaintiff in *Tyus* had previously acknowledged pleading a bare procedural violation only to do an about-face once *Spokeo* was issued.

In sum, none of WinCo's cases requires affirmance of the lower court.

### C. To the extent additional allegations of harm are required, Mitchell should be granted leave to amend.

WinCo also rails against Mitchell's requested leave to amend to add allegations of actual confusion to the extent necessary. (WinCo. Br. pp. 31-34.) WinCo claims amending would be futile and that Mitchell should have requested leave to amend from the District Court. (WinCo. Br. p. 34.) These arguments fail.

First, WinCo cannot show that allegations of express confusion would be futile. The fact that the Authorization contains a statement indicating the consumer has read the disclosure should be accorded little weight given its presence in an unlawful document. Likewise, there are sufficient levels of extraneous information present in the Disclosure & Authorization and the other employment application materials to support a claim of confusion. It should be recalled that Mitchell alleges that the disclosure was unclear and not conspicuous as the FCRA requires—confusion flows from such a lack of clarity.

Second, the District Court ruled that Mitchell's privacy and informational harms were "bare procedural" non-actionable injuries and

that Mitchell needed to plead *additional harm*, such as the dissemination of false information or not being hired for the position— neither of which Mitchell can allege—to show standing via an amendment. The District Court's use of this incorrect standard is the focus of this appeal; had it applied the correct test, Mitchell would have sought leave to amend to include allegations regarding her confusion stemming from the Disclosure's lack of clarity. The lower court's requirement that Mitchell show false information or adverse action made clear that seeking leave to amend would have been denied.

Also, Mitchell filed her FAC on April 20, 2016 (Dkt. 10.) *Spokeo* was decided a month later, on May 16, 2016, and *Syed* was decided January 20, 2017 (and amended March 20, 2017). Briefing on WinCo's Motion to Dismiss the FAC closed September 19, 2016 (R. 113.) The District Court issued its dismissal order 169 days later on March 7, 2017 (R. 7.) Three days later, Mitchell moved for reconsideration under *Syed* (which had been decided 4 months after briefing had closed and had not been addressed by either party). 248 days later, on November 13, 2017, the lower court denied the Motion to Reconsider, reaffirming its prior finding that Mitchell's informational and privacy harms were

"bare procedural" and that she could not show standing absent allegations of false information or adverse action. (R. 1.) Under such circumstances, the Court should reject WinCo's assertion that Mitchell had "ample opportunity to amend her complaint…" (WinCo Br. p. 34) and allow Mitchell her day in Court.

Put simply, Mitchell should be permitted to amend the FAC to the extent the Court deems it necessary.

## III. CONCLUSION

For all of the foregoing reasons the lower court's dismissal should be reversed and remanded.

Dated: July 9, 2018                    Respectfully submitted,


                                       By: /s/ Patrick H. Peluso
                                       Attorneys for Plaintiff-Appellant
                                       Gloria Mitchell

## PROOF OF SERVICE

I am employed in the State of Colorado, County of Denver. I am over the age of 18 and not a party to the within suit; my business address is 3900 E Mexico Avenue, Suite 300, Denver, Colorado 80210.

On July 9, 2018, I served the document described as: **REPLY BRIEF** on the interested parties in this action by sending a true copy thereof to all counsel of record.

[]　　BY MAIL (ENCLOSED IN A SEALED ENVELOPE): I deposited the envelope(s) for mailing in the ordinary course of business at Denver, Colorado. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice, sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Denver, Colorado.

[x]　　BY E-MAIL: I hereby certify that this document was served from Denver, Colorado, by e-mail delivery on all counsel of record at their most recent known email address or e-mail of record in this action via the Court's electronic filing system.

[ ]　　BY FAX: I hereby certify that this document was served from Denver, Colorado, by facsimile delivery on the parties listed herein at their most recent fax number of record in this action.

[ ]　　BY PERSONAL SERVICE: I delivered the document, enclosed in a sealed envelope, by hand to the offices of the addressee(s) named herein.

[ ]　　BY OVERNIGHT DELIVERY VIA UNITED PARCEL SERVICE: I am "readily familiar" with this firm's practice of collection and processing correspondence for overnight delivery. Under that practice, overnight packages are enclosed in a sealed envelope with a packing slip attached thereto fully prepaid. The packages are delivered by our office to a designated collection site.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of July, 2018 at Denver, Colorado.


Patrick H. Peluso                                        /s/ Patrick H. Peluso
Type or Print Name                             Signature